UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN MCLAUGHLIN,<br><br>    Plaintiff,<br><br>v.<br><br>J. CASTRO, et al.,<br><br>    Defendants. | 1:17-cv-001597-DAD-MJS (PC)<br><br>**ORDER FINDING NO COGNIZABLE CLAIMS AND REQUIRING PLAINTIFF TO AMEND OR RESPOND**<br><br>**(ECF No. 1)**<br><br>**THIRTY DAY DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983.

Plaintiff's December 1, 2017 complaint is now before the Court for screening. (ECF No. 1.) As discussed below, the Court finds Plaintiff has asserted no cognizable claims and orders Plaintiff to amend his complaint or respond as described below.

**I.    Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion

thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.  Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiffs must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 677-78.

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

Under section 1983 the Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless,

the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### III. Plaintiff's Allegations

Plaintiff is currently incarcerated at Corcoran State Prison ("CSP") in Corcoran, California, where his claims arose. Hepursues claims under the 5th, 8th and 14th Amendments against Defendants J. Castro, Chief Deputy Warden at CSP; D. DeAcevedo, Correctional Counselor at CSP; J. Perez, Correctional Counselor at CSP; M. Riley, Correctional Officer at CSP; E. Magallanes, Correctional Sergeant at CSP; J. Amaya, Correctional Lieutenant at CSP; F. Munoz, Correctional Lieutenant at CSP; and B. Odle, Chief Disciplinary Officer at CSP.

Plaintiff's allegations are summarized as follows:

Plaintiff, a member of the prison's Black Men's Advisory Council ("Black MAC"), alleges that, on March 4, 2017, Defendant Riley conducted a search of his cell and commented that Plaintiff's glasses "look like bitch glasses to me." Plaintiff then followed Defendant Riley to the correctional officer's office, stood outside the office and spoke to Defendant Riley in what evolved into a "heated debate" about California Department of Corrections and Rehabilitation ("CDCR") policy. The debate ended with Defendant Riley issuing what Plaintiff interpreted as a threat: "This is Corcoran and we do what the fuck we want. You watch."

On March 5, 2017, two unidentified correctional officers came to Plaintiff's cell and requested that the "Black MAC rep come to the door." Plaintiff complied and was taken to the program office for reasons that were not explained to him. Plaintiff was then placed in a holding cell. Shortly thereafter, a second inmate, Snowden, was placed in the next holding cell. Plaintiff and Snowden discussed various reasons why they might have been brought to the program office. Defendant Magallanes soon arrived and delivered Plaintiff an Administrative Segregation Unit ("ASU") placement notice.

The notice accused Plaintiff and Snowden of "extortion by means of threat by way

3

of G.R.I."[1] Defendant Riley authored the report that included this accusation. Defendant Magallanes then asked Plaintiff and Snowden to sign the documents, which they refused to do at first. When Defendant Magallanes left, Plaintiff asked Snowden if he had recently offended Defendant Riley. Snowden responded that he observed Plaintiff's "heated debate" with Defendant Riley and that Defendant Riley "glimpsed at him several times during the argument."

Defendant Magallanes returned and told Plaintiff and Snowden that they would be kicked back into that yard the next day. He also instructed both of them to cooperate and to sign cell compatibility chronos for one another.

On March 11, 2017, correctional officer Huerta gave Plaintiff a CDCR disciplinary report signed by Defendant Riley for "attempted extortion by way of threat."

On March 15, 2017, Plaintiff participated in an ad-seg placement committee where Defendants Perez, Deazavedo and Castro collectively referred Plaintiff for a 60 day ad-seg extension. Plaintiff informed the committee that he had already received a disciplinary report for extortion (of which he was innocent) and that the 60 day extension is a month too long for that accusation. Defendant Perez told Plaintiff that he should not have already received the disciplinary report because the information had only recently been forwarded to the investigative services unit for further review. Plaintiff protested the lack of process, but Defendant Castro told him to quit wasting their time and sent him back to his cell. At 6:30 that evening, Defendant Magallanes delivered to Plaintiff the confidential information disclosure form that was supposed to be with the disciplinary report from March 11.

On April 11, 2017, correctional officer Huerta came to the cell and told Snowden he would be the first to have his RVR hearing. Snoden's hearing lasted 45 minutes and Plaintiff was escorted to his hearing immediately thereafter. Hearing officer Defendant Amaya admitted "how messed up prison has become when someone could make up a story about someone else and that the accused could end up in ad-seg." Defendant

---

[1] Plaintiff does not define the acronym "G.R.I."

4

1 Amaya did not take Plaintiff's statement of his defense before leaving to talk to his
2 captain. The hearing never continued, despite Plaintiff's inquiry as to when it would be
3 completed. Plaintiff filed a staff complaint against Defendant Amaya on April 19, 2018 for
4 not completing the hearing.

On April 22, 2017, correctional officer Huerta dropped off Plaintiff's final copy of the RVR, which noted that Plaintiff had been found guilty. Plaintiff filed an inmate grievance on April 23, 2018 for due process violations that occurred during the RVR process.

On May 16, 2018, Plaintiff was taken to the classification committee where he was told by Defendant Deacevedo that he was being released to the yard where the extortion took place. Plaintiff, addressing R. Broomfield, the chairperson of the committee, explained that he did not extort anyone and that he was set up by Defendant Riley because of their heated debate. Plaintiff told Broomfield that he did not feel comfortable being around Defendant Riley. Broomfield responded that he could not keep Plaintiff in ad-seg, but he did tell Sergeant Childress to house Plaintiff in Building 1 of B Yard so that he would not be around Defendant Riley. Snowden and plaintiff were then housed in Building 1 of B Yard.

On May 18, 2017, while in B Yard, Plaintiff encountered Defendant Riley who said "What the fuck is it going to take to get rid of you?" Plaintiff did not respond and sat at a table directly in front of the program office. Ten minutes later, a group of Hispanic inmates rushed at Plaintiff and Snowden, resulting in a riot. Plaintiff was handcuffed by Defendant Riley during the altercation, at which time Defendant Riley told him: "I don't want you here, you better not sign off!"

Plaintiff and the other rioters were then escorted to the gym where they were seated apart from one another on the floor. A female guard then asked the inmates "Who's signing off?" Plaintiff "signed off." The complaint does not explain what that means.

On May 24, 2017, Plaintiff was removed from enhanced outpatient care by the

5

mental health committee because he had been found guilty of extortion. Plaintiff was then moved to Building A where there were no enhanced outpatient inmates. On May 28, 2017, Plaintiff received a noticed dated May 24, 2018 that his inmate grievance had been partially granted on his due process claims related to the RVR of extortion by means of threat. The notice informed Plaintiff that his RVR would be re-issued and re-heard.

On June 17, 2017, Plaintiff attended a re-hearing where the hearing officer J. Torres found Plaintiff not guilty, determining that the confidential source did not meet the criteria for reliability. Plaintiff sent his staff complaint against Defendant Amaya to the Director's level of appeal on June 28, 2017, which cancelled the appeal on September 12, 2017. He sent his disciplinary appeal concerning the RVR to the Director's level of appeal on July 24, 2017, but was told that the issue had already been resolved at the lower level.

Plaintiff then filed this action, alleging violations of his Fifth, Eighth, and Fourteenth Amendment rights. He seeks compensatory and punitive damages.

**D.     Analysis**

Plaintiff's Complaint complains of a history of successive events involving a succession of individuals and then identifies several Constitutional Amendments Plaintiff believes have been violated, Plaintiff's pleading approach is so overly broad as to leave the Court unable to properly analyze it to determine if it states a cognizable claim.  It is a prohibited "shotgun pleading."

Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations. They are unacceptable. One common theme of Federal Rule 8(a), Iqbal, and Twombley is that plaintiffs must give the defendants a clear statement about what the defendants allegedly did wrong. Courts have recognized that allowing shotgun pleadings would lead to many negative consequences. See Mason v. County of Orange, 251 F.R.D. 562, 563–64 (C.D. Cal. 2008) (quoting Anderson v.

District Board of Trustees, 77 F.3d 364, 366–67 (11th Cir. 1996)) ("[E]xperience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice."); see also Byrne v. Nezhat, 261 F.3d 1075, 1130 (11th Cir. 2001) ("Cases framed by shotgun pleadings consume an inordinate amount of a court's time. As a result, justice is delayed, if not denied, for litigants who are standing in the queue waiting to be heard. Their impression of the court's ability to take care of its business can hardly be favorable. As the public becomes aware of the harm suffered by the victims of shotgun pleading, it, too, cannot help but lose respect for the system.").

Plaintiff's claims must be set forth simply, concisely and directly. Fed. R. Civ. P. 8(d)(1) ("[e]ach allegation must be simple, concise and direct"); McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) ("[t]he Federal Rules require that averments 'be simple, concise, and direct'"); see Crawford-El v. Britton, 523 U.S. 574, 597 (1998) (reiterating that "firm application of the Federal Rules of Civil Procedure is fully warranted" in prisoner cases).

Plaintiff, if he chooses to amend, should quite directly and simply set out precisely what each identified Defendant did to violate his constitutional rights, when and how he did it, and how Plaintiff was injured as a result.

The courts do grant leeway to pro se plaintiffs in construing their pleadings. See, e.g., Brazil v. U.S. Dept. of Navy, 66 F.3d 193, 199 (9th Cir. 1995) ("[a]lthough a pro se litigant . . . may be entitled to great leeway when the court construes his pleadings, those pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong"). Even with leeway and liberal construction, however, the complaint must not force the Court and Defendants to guess at what is being alleged against whom, require the Court to spend its time "preparing the 'short and plain statement' which Rule 8 obligated plaintiff to submit," or require the Court and Defendant to prepare lengthy outlines "to determine who is being sued for

7

what." McHenry, 84 F.3d at 1179. An excessively long pleading, containing much narrative and story-telling, without clear statement of which individual did what, very likely will result in delaying the review required by 28 U.S.C. § 1915A and, ultimately, an order dismissing Plaintiff's action pursuant to Fed. R. Civ. P. 41, for violation of these instructions. Id.

For these reasons, Plaintiff's complaint will be dismissed with leave to amend.

While the Court cannot, at this time, accurately determine which claims Plaintiff is pursuing against which Defendants, or the exact grounds for each claim, it appears Plaintiff may wish to claim failure to protect under the Eighth Amendment and due process violations under the Fourteenth Amendment. The Court will provide Plaintiff with the appropriate legal standards for alleging such claims should he choose to file an amended complaint. As discussed below, the Court does not envision how the Fifth Amendment might have been violated.

### 1. Fifth Amendment

The Fifth Amendment applies "only to actions of the federal government—not to those of state or local governments." Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001) (citing Schweiker v. Wilson, 450 U.S. 221, 227 (1981)). The Fifth Amendment does not apply here because Plaintiff is a state prisoner complaining of acts by state officials. Thus, Plaintiff does not and cannot state a claim on Fifth Amendment grounds.

### 2. Eighth Amendment Failure to Protect

To the extent Plaintiff is attempting to allege an Eighth Amendment claim, the Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2005). Prison officials must provide prisoners with medical care and personal safety and must take reasonable measures to guarantee the safety of the inmates. Farmer v. Brennan, 511 U.S. 825, 832–33 (1994) (internal citations and quotations omitted). Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not

part of the penalty that criminal offenders pay for their offenses against society. Farmer, 511 U.S. at 833–34 (quotation marks omitted); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).

However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841 (quotations omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040. Where the failure to protect is alleged, the defendant must knowingly fail to protect plaintiff from a serious risk of conditions of confinement where defendant had reasonable opportunity to intervene. Orwat v. Maloney, 360 F.Supp.2d 146, 155 (D. Mass. 2005), citing Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 n.3 (1st Cir. 1991); see also Borello v. Allison, 446 F.3d 742, 749 (7th Cir. 2006) (defendant's deliberate indifference must effectively condone the attack by allowing it to happen); accord, Farmer, 511 U.S. at 833–34 (if deliberate indifference by prison officials effectively condones the attack by allowing it to happen, those officials can be held liable to the injured victim). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstrating in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842.

Plaintiff may wish to assert an Eighth Amendment claim arising out assault by other inmates. However, in its current form, the complaint does not make any such comprehensible claim. Plaintiff will be granted the opportunity to amend though.

### 3. Fourteenth Amendment Due Process

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). To state a claim, Plaintiff must first identify the interest

at stake. Id. at 221. Liberty interests may arise from the Due Process Clause or from state law. Id. The Due Process Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, id. at 221–22 (citations and quotation marks omitted), and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue, id. at 222–23 (citing Sandin v. Conner, 515 U.S. 472, 481–84 (1995)) (quotation marks omitted). Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Wilkinson, 545 U.S. at 221 (citing Sandin, 515 U.S. at 484) (quotation marks omitted); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007). If a protected interest is identified, the inquiry then turns to what process is due. Wilkinson, 545 U.S. at 224.

It is possible that Plaintiff is asserting a due process claim concerning the allegedly false RVR drafted by Defendant Riley. As currently stated however, the complaint does not clearly make such an allegation. Furthermore, it appears that the RVR at issue was reversed and Plaintiff was found not guilty and so was not damaged by a lack of due process. Regardless, the Court will allow Plaintiff the opportunity to amend.

**IV.     Conclusion and Order**

Plaintiff's complaint fails to state a claim on which relief may be granted. The Court will grant Plaintiff an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff does not wish to amend, he may instead file a notice of voluntary dismissal, and the action then will be terminated by operation of law. Fed. R. Civ. P. 41(a)(1)(A)(i). Alternatively, Plaintiff may forego amendment and notify the Court that he wishes to stand on his complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment). If the last option is chosen, the undersigned will issue findings and recommendations to dismiss the complaint without leave to amend, Plaintiff will have an opportunity to object,

and the matter will be decided by a District Judge. No further opportunity to amend will be given by the undersigned.

If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff should note that although he has been granted the opportunity to amend his complaint, it is not for the purposes of adding new and unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully review this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves a function in the case. Id. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly titled, in bold font, "First Amended Complaint," reference the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. Within thirty (30) days from the date of service of this order, Plaintiff must file either a first amended complaint curing the deficiencies identified by the Court in this order, a notice of voluntary dismissal, or a notice of election to stand on the complaint; and

2. If Plaintiff fails to file a first amended complaint or notice of voluntary

11

dismissal, the Court will recommend the action be dismissed, with prejudice, for failure to obey a court order and failure to state a claim.

IT IS SO ORDERED.

Dated: April 10, 2018          /s/ *Michael J. Seng*
                               UNITED STATES MAGISTRATE JUDGE