| | |
|---|---|
| MARTIN McLAUGHLIN, <br><br> Plaintiff, <br><br> v. <br><br> J. CASTRO, et al., <br><br> Defendants. | CASE NO. 1:17-cv-1597-DAD-JLT (PC) <br><br> **FINDINGS AND RECOMMENDATIONS TO DISMISS NON-COGNIZABLE CLAIMS** <br><br> (Doc. 16) <br><br> **THIRTY-DAY DEADLINE** |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Plaintiff has filed a second amended complaint asserting claims against employees of the California Department of Corrections and Rehabilitation[1]. (Doc. 16.) Generally, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1] Though the pleading is captioned "First Amended Complaint," it is actually Plaintiff's third attempt to state a cognizable claim and, therefore, the Second Amended Complaint. See Doc. 1 (Complaint), Doc. 12 (First Amended Complaint).

## I. Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiffs must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 677-78.

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). To state a claim under section 1983, a Plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

Under section 1983 the Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II. Plaintiff's Allegations

Plaintiff brings this action against several individuals for conduct occurring while he was housed at California State Prison in Corcoran, California. He names Chief Deputy Warden J.

Castro, Correctional Counselor D. DeAcevedo, Correctional Counselor J. Perez, Correctional Officer M. Riley, Correctional Sergeant E. Magallanes, and Correctional Lieutenant J. Amaya. Plaintiff seeks $52,000 in damages.

Plaintiff's allegations can be fairly summarized as follows:

### A. Search of Plaintiff's Cell

On March 4, 2017, Defendant Riley searched Plaintiff's cell and attempted to confiscate a pair of Plaintiff's prescription eyeglasses. Plaintiff told Riley that it would be illegal for him to take the glasses, and Riley responded that he "was the law" while tossing them. When Plaintiff told Riley that he would file a 602 inmate grievance, Riley warned him to be careful "cause this is his house and he'll do what he … pleases."

### B. False Charge

On March 5, 2017, Plaintiff and a second inmate were handcuffed and placed in a holding cage without explanation. Defendant Magallanes, Riley's supervisor, then approached Plaintiff with an Administrative Segregation Placement Notice accusing Plaintiff and the second inmate of "Extortion by Means of Threat by Way of GBI [Great Bodily Injury]." When Plaintiff refused to sign this fabricated notice, which was authored by Riley, Magallanes said, "You Blacks make yourselves look guilty when you don't cooperate." When Plaintiff told Magallanes that the report was fabricated by Riley after Plaintiff threatened to file an inmate grievance, Magallanes slapped the door of Plaintiff's holding case and warned Plaintiff to "stay in his place" because "this is our house." Magallanes also said, "All you Blacks hiding out over here in the E.O.P. (Enhanced Out Patient) Program should be ashamed of yourselves preying on these little white boys." As this Defendant was leaving, he laughed and said, "You monkeys won't be that long in the hole."

### C. Administrative Segregation Placement Committee Hearing

On March 15, 2017, Plaintiff appeared before Defendants Perez, DeAcevedo, and Castro for an administrative segregation placement hearing. Even though Plaintiff informed these Defendants of the fabricated notice, Castro told him that "Here at Corcoran it is just not smart of a Black inmate to be making waves." DeAcevedo said, "you will sit back here 60 days so you

might get a little pail [sic] but the time for you to file anymore 602's (grievance forms) will run out." Lastly, Perez told Plaintiff not to cry "cause even if these charges are false, this hole time will help him fix his skills to not get caught the next time."

In administrative segregation, Plaintiff was housed with 70-80 other EOP inmates in very noisy conditions ("the majority of these prisoners … kick[ed] on their cell doors all day and all night") in a cell that was "invaded with rats and flies." On "a few different occurences [*sic*]," Plaintiff killed a rat to show staff and asked for an exterminator to no avail.

### D. RVR Hearing

On April 11, 2017, Defendant Amaya held a hearing on the Rules Violation Report drafted by Riley. Amaya denied Plaintiff certain due process rights, including the ability to call any witnesses and to present documentary evidence. Additionally, Amaya was not an impartial fact finder since he did not in fact hold a hearing at all.

## III. Discussion

### A. Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Accord Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline). The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).

Plaintiff accuses Riley of initiating a false charge against him after Plaintiff stated that he would file an inmate grievance following March 4, 2017 the cell search. He also claims that, even though Magallanes was aware of the circumstances surrounding the false charge, he warned Plaintiff to "stay in his place" because "this is our house." Finally, Plaintiff claims that after he informed them of the false charge and the reason it was issued, Castro said, "here at Corcoran it is just not smart of a Black inmate to be making waves"; DeAcevedo said, "you will sit back here 60 days so you might get a little pail [sic] but the time for you to file anymore 602's (grievance forms) will run out"; and Perez said, "he shouldn't cry now cause even if these charges are false, this hole time will help him fix his skills to not get caught the next time." These allegations are sufficient to proceed against each of these Defendants on a First Amendment retaliation claim.

### B. Due Process

#### 1. False Charge

Plaintiff again asserts allegations regarding the filing of false charges against him. He was previously informed that false charges alone are not actionable under § 1983 because falsely accusing a person of misconduct does not violate a right secured by the Constitution or laws of the United States. For a false accusation to be potentially actionable, the false charge must implicate some constitutional right, such as the Fourteenth Amendment's right to due process. An allegation of a false charge that results in discipline that is not severe enough to amount to a deprivation of a protected liberty interest under Sandin – that is, by imposing an atypical and significant hardship or by inevitably affecting the duration of confinement – does not state a claim under § 1983. See Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002) (no § 1983 claim was stated for allegedly false charges because the disciplinary confinement imposed was too short to amount to an atypical and significant hardship under Sandin). Even if the false charge does result in discipline that amounts to the deprivation of a protected liberty interest under Sandin, a § 1983 claim is not stated if the inmate is afforded the procedural protections required by federal law at the disciplinary hearing. See Smith, 293 F.3d at 654; Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986); Hanrahan v. Lane,

747 F.2d 1137, 1140-41 (7th Cir. 1984). Plaintiff has thus not stated a claim based on a false charge.

### 2. Administrative Segregation

Plaintiff next asserts a due process claim premised on his placement in administrative segregation for 60 days. The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects individuals against governmental deprivations of life, liberty or property without due process of law. Interests that are procedurally protected by the Due Process Clause may arise from two sources: the Due Process Clause itself and laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether they are authorized by state law. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (citing Vitek v. Jones, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and Washington v. Harper, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that the liberty in question is one of "real substance." See Sandin, 515 U.S. at 477-87. An interest of "real substance" will generally be limited to freedom from restraint that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence." Id. at 484, 487.

A due process claim might be made for some administrative segregation placement decisions. When prison officials initially determine whether a prisoner is to be segregated for administrative reasons and a liberty interest of real substance is implicated, due process requires that prison officials hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the charges against him or the reasons segregation is being considered, and allow the prisoner to present his views. Toussaint v. McCarthy, 801 878y77F.2d 1080, 1100 (9th Cir. 1986), abrogated in part on other grounds by Sandin, 515 U.S.

472. Due process also requires that there be some evidence to support the prison officials' decision. <u>Superintendent v. Hill</u>, 472 U.S. 445, 455 (1985); <u>Toussaint</u>, 801 F.2d at 1104-05.

Assuming that the conditions of administrative segregation that Plaintiff describes in the pleading (daily excessive noise and a vermin infestation) implicate a liberty interest of real substance, Plaintiff fails to state a due process claim because his allegations demonstrate that he received notice on March 5, 2017, an informal nonadversary hearing ten days later, and an opportunity to present his views. In addition, there appears to have been some evidence to support the transfer to administrative segregation in the form of the RVR initiated by Defendant Riley. Therefore, Plaintiff received all the process that he was due under the circumstances.

### 3. Administrative Hearing

Plaintiff brings a due process claim premised on the process that he received in the context of the RVR hearing on the extortion charge. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974) (citation omitted). However, an inmate subject to disciplinary sanctions that include the loss of good time credits must receive (1) twenty-four-hour advanced written notice of the charges against him, <u>id.</u> at 563-64; (2) "a 'written statement by the factfinders as to the evidence relied on and the reasons' for the disciplinary action," <u>id.</u> at 564 (citation omitted); (3) an opportunity to call witnesses and present documentary evidence where doing so "will not be unduly hazardous to institutional safety or correctional goals," <u>id.</u> at 566; (4) assistance at the hearing if he is illiterate or if the matter is complex, id. at 570; and (5) a sufficiently impartial fact finder, <u>id.</u> at 570-71. A finding of guilt must also be supported by "some evidence in the record." <u>Superintendent v. Hill</u>, 472 U.S. 445, 454 (1985).

Plaintiff claims that his due process rights were violated with respect to the RVR hearing in that defendant Amaya found Plaintiff guilty after failing to hold a hearing or accepting Plaintiff's written statement. While these allegations are generally sufficient to state a due process claim, Plaintiff's prior pleading included detailed allegations describing how he filed an administrative grievance following his guilty finding, that he was granted a re-hearing, and that

the guilty finding was reversed. The previous screening order held that these allegations demonstrated Plaintiff's due process claim related to the first RVR hearing failed. See, e.g., Shotwell v. Brandt, 2012 WL 6569402, at *3 (N.D. Cal. Dec. 17, 2012) (no due process violation where Plaintiff's RVR was ordered reissued and reheard, the Plaintiff was found not guilty at the second hearing, and the Plaintiff suffered no credit loss or any other punishment).

By omitting allegations in the second amended complaint regarding the second RVR hearing and the reversal of the guilty finding, Plaintiff paints an incomplete picture related to his due process rights. In any event, the Court will accept these allegations as true for purposes of this screening order. PAE Gov't Servs. v. MPRI, Inc., 514 F.3d 856 (9th Cir. 2007). However, As described in the concurring opinion in Shirley v. University of Idaho, College of Law, 800 F.3d 1193, 1194, a finding that a claim can proceed despite inconsistent allegations does not preclude the availability of "collateral consequences in the litigation, including possible sanctions under Rule 11 or undermining the Plaintiff's credibility." **Thus, Plaintiff should consider long and hard whether he wants to proceed on this claim.** Notably, if the defense files a motion for summary adjudication and demonstrates that the guilty finding on the RVR was overturned and demonstrates that the plaintiff has violated Rule 11 by filing a false pleading, the conditions would be ripe for the Court to award monetary or other sanctions, which could be enforced no matter the ultimate outcome of this litigation. Should Plaintiff choose not to proceed on this claim, he may file a notice that he voluntarily dismisses this claim before any defendant appears in this action.

### C. Equal Protection

Plaintiff also presents an equal protection claim based on comments made by several of the Defendants regarding Plaintiff's race. "The Equal Protection Clause of the Fourteenth Amendment provides that '[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws.'" Angelotti Chiropractic v. Baker, 791 F.3d 1075, 1085 (9th Cir. 2015) (quoting U.S. Const. amend. XIV, § 1). "The Equal Protection Clause requires the State to treat all similarly situated people equally. This does not mean, however, that all prisoners must receive

identical treatment and resources." Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013) (citations omitted). To state an equal protection claim, a claimant "must allege facts plausibly showing that 'the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class'" such as race, religion, or national origin. Id. (alteration in original) (quoting Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005)); see also New Orleans v. Dukes, 427 U.S. 297, 303 (1975) (noting that "suspect distinctions such as race, religion, or alienage" are protected classes for equal protection purposes). "Intentional discrimination means that a defendant acted at least in part because of a Plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (emphasis in original) (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994)).

Plaintiff's equal protection claim is directed at Perez, DeAcevedo, and Castro, who are accused of placing Plaintiff in administrative segregation because of his race. However, of the comments attributed to these Defendants, only Castro referenced Plaintiff's race ("Here at Corcoran it is just not smart of a Black inmate to be making waves."). While DeAcevedo told Plaintiff that he "might get a little pail [sic]," this does not suggest that his decision to retain Plaintiff in administrative segregation was based on Plaintiff's race. Furthermore, the comment attributed to Perez do not reference Plaintiff's race at all, and the Court declines to attribute racial motivation or discrimination to DeAcevedo or Perez based on comments made by Castro.

Although Plaintiff does not formally assert this claim against Magallanes, liberally construing the pleading leads the Court to conclude that Plaintiff states a colorable equal protection claim against this Defendant as well based on his comments that "All you Blacks hiding out over here in the E.O.P. (Enhanced Out Patient) program should be ashamed of yourselves preying on these little white boys," and "you monkeys won't be that long in the hole." Accordingly, this claim may proceed against Castro and Magallanes.

**IV. Conclusion**

Based on the foregoing, the Court **RECOMMENDS** that Plaintiff be allowed to proceed only on the following claims: (1) a First Amendment retaliation claim against Riley, Magallanes,

Castro, Perez, and DeAcevedo; (2) a Fourteenth Amendment due process claim against Amaya; and (3) a Fourteenth Amendment equal protection claim against Castro and Magallanes. All other claims should be dismissed as not cognizable.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within 14 days after being served with the findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within 14 days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __June 20, 2019__           /s/ Jennifer L. Thurston
                                                       UNITED STATES MAGISTRATE JUDGE